**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 27, 2013**

# In the Court of Appeals of Georgia

A13A0793. HANNA v. FIRST CITIZENS BANK & TRUST CO.,   DO-044
    INC.

DOYLE, Presiding Judge.

First Citizens Bank & Trust Co., Inc. ("the Bank"), filed a complaint for failure to pay on a promissory note and personal guarantees against Southern Gentry Developments, LLC ("Southern Gentry"), Robert B. Donner, and David Hanna, alleging that the parties defaulted on a note for which Hanna had personally guaranteed $12,231,000. After the parties filed cross-motions for summary judgment, the trial court determined that Hanna had personally guaranteed the note and was liable for the debt. Hanna now appeals,[1] arguing that the trial court erred by finding that he had personally guaranteed the 2007 note. For the reasons that follow, we

---

[1] Defendants Southern Gentry and Donner are not parties to this appeal.

affirm the judgment as to liability, but reverse the award of damages and remand for further proceedings consistent with this opinion.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

*September 29, 2006 Note and Guaranties*

Viewed in this light, the record shows that on September 29, 2006, Southern Gentry executed a promissory note ("2006 Note") in the amount of $12,231,000 with a maturity date of September 5, 2007, in favor of the Bank.[3] The note stated that it was secured with a deed to secure debt, and Donner deposed that it was for the purchase and development of the Country Hills subdivision. After the 2006 Note was

---

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] The Note was originally executed in favor of Georgian Bank, which later failed, and the Federal Deposit Insurance Corporation ("the FDIC") took control of Georgian after the failure. Thereafter, First Citizen obtained the notes and personal guarantees via an asset purchase and assumption agreement with the FDIC.

2

executed, the Bank disbursed the $12,231,000 to Donner, who used the proceeds to acquire land for the subdivision and develop and install infrastructure.

It is undisputed that Hanna and Donner executed unconditional personal guaranties of the 2006 Note, which personal guaranties stated that the guarantors promised to repay the 2006 Note "principal amount of . . . $12,231,000.00, together with any renewals, modifications, consolidations, and extensions thereof."[4] Paragraph 1 of Hanna's 2006 Guaranty stated that

> Guarantor hereby consents and agrees that *Lender may at any time, and from time to time, without notice to . . . or further consent from Guarantor . . . substitute for any collateral so held by it or by such person, firm, trustee or corporation, other collateral of like kind, or of any kind; modify the terms of the Note or any of the other Loan Documents; extend or renew the Note for any of the other Loan Documents*, and to any persons or entities now or hereafter liable, whether directly or indirectly, jointly, severally, . . . or take or fail to take any action of any type whatsoever with respect to the Premises or with respect to the Loan Documents which the Lender deems, in its sole discretion, is in its best interest under the circumstances then present. *No such action which Lender shall take or fail to take in connection with the Note or any of the other Loan Documents or any security* for the payment of the indebtedness of Borrower to Lender or for the

_____

[4] Hanna's guaranty was executed on September 25, 2006.

3

performance of any obligations or undertakings of Borrower, and no course of dealings with Borrower or any other person, *shall release the Guarantor's obligations hereunder, affect this Guaranty in any way or afford the Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Note and the other Loan Documents*, or any of them, and any and all references herein to the Note or to any of the other Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. . . .[5]

Paragraph 3 of Hanna's 2006 Guaranty stated that

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations . . . ; (b) any defense that may arise by reason of incapacity, lack of authority, death or disability . . . ; (c) any defense based on the failure of Lender to give notice of the existence, creation, or incurring of any new or additional indebtedness or obligation or the failure of Lender to give notice of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon election of remedies by Lender which destroys or otherwise impairs any subrogation rights of the Guarantor to proceed against Borrower for reimbursement, or both; (e) any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to the Guarantor any facts it may now or hereinafter

---

[5] (Emphasis supplied.)

know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed except as otherwise required in this Guaranty; (i) protest and notice of dishonor or of default to the Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) except as otherwise provided herein, any and all other notices whatsoever to which the Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note or any of the other Loan Documents; (m) the provisions of [OCGA] 10-7-24 . . . ; (n) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled, to the extent permitted by law.

Paragraph 5 stated that

[t]his Guaranty shall be an absolute, irrevocable and continuing guaranty. Guarantor acknowledges that it is responsible for all sums and obligations represented by the Note and the Loan Documents, notwithstanding the Borrower's liability therefor may be diminished or eliminated by operations of bankruptcy or creditor's rights or otherwise. . . . It is the intention of Guarantor that Guarantor's obligations hereunder shall not be discharged except by Borrower's or Guarantor's performance, or the performance by any other guarantor of the obligations of Borrower, whether given simultaneously herewith or at a later date, and then only to the extent of such performance.

Paragraph 13 of Hanna's 2006 Guaranty stated that

> [t]his Guaranty may not be changed orally, and *no obligation of the Guarantor can be released or waived by Lender or any officer or agent of Lender except by a writing signed by a duly authorized officer of Lender*. This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Note and other Loan Documents have been completely performed.[6]

Hanna's guaranty also expressly limited his total liability to $12, 231,000.

*September 5, 2007 Document*

On September 5, 2007, Southern Gentry and the Bank executed a document entitled "promissory note," naming the same outstanding principal amount of $12,231,000 and a maturity date of September 10, 2008. This document listed as security "Land Lot 68, 17th District, Being 20.044 acres in Fulton County" as well as the personal guaranties of Donner and Hanna. The document also referenced the 2006 Note as the "prior note," and it stated that all principal sums had been advanced to Southern Gentry, with account numbers 11921 and loan number 100950600. The parties do not dispute that this document is a renewal or extension of the 2006 Note.

---

[6] (Emphasis supplied.)

6

*November 21, 2007 Document*

On November 21, 2007, Southern Gentry executed a promissory note ("November 2007 Note") in the amount of $12,541,000. This document had a maturity date of September 10, 2008, and it stated that it was secured with a Deed to Secure Debt issued the same date as the November 2007 Note for an interest in real property in Fulton County. On November 21, 2007, Donner also executed a new personal guarantee at that time, and it is undisputed that Hanna did not.

*September 10, 2008 Document*

On September 10, 2008, Southern Gentry executed a promissory note for a principal amount of $10,471,000 with a maturity date of March 10, 2009. The September 2008 document referenced the November 2007 document and personal guaranties of Hanna and Donner as the "prior note," and it listed account number 11921, loan number 100950600, and listed collateral as "Land Lot 68, 17th District, Being 20.044 acres in Fulton County." The document noted that all conditions for future advances were listed "in the A&D Loan Agreement dated September 29, 2006."

*March 10, 2009 Document*

On March 10, 2009, Southern Gentry executed a document entitled "promissory note," which stated that "[t]his Promissory Note is separately secured by Deed to Secure Debt dated September 29, 2006[,] and Personal Guaranty(s) of Robert Donner and David Hanna, dated March 10, 2009." It is undisputed that Hanna did not sign a personal guaranty on March 10, 2009. The document listed collateral as "Land Lot 68, 17th District, Being 20.044 acres off Glenridge Road in Fulton County," listed the prior note as being dated September 10, 2008, listed account number 11921, listed loan number 100950600, and stated that conditions for future advances were stated in the A&D loan agreement dated September 19, 2006. Hanna deposed that Donner asked him to execute another guaranty, but Hanna refused to do so. It is undisputed that the Bank did not release Hanna's 2006 Guaranty in writing.

Thereafter, when Southern Gentry failed to repay its obligations, the Bank sued Southern Gentry, Donner, and Hanna on the March 10, 2009 Note, Donner's 2009 and 2006 personal guaranties, and Hanna's September 2006 personal guaranty. The Bank and Hanna filed cross-motions for summary judgment, and after a hearing on the motions, in a July 30, 2012 order, the trial court found that the 2007 Note was a renewal of the 2006 Note because the increased amount of debt was "merely a reflection of the capitalized interest at the time of renewal [,and n]either party

8

[presented evidence] that any new payout was issued by [First Citizen] in conjunction with the November 2007 note." The trial court further determined that because Hanna had not established that his 2006 Guarantee had been discharged in writing by the Bank or by payment of the loan, the Bank had established that it was entitled to summary judgment against Hanna.

1. Hanna contends that the Bank failed to establish a prima facie case that he was liable to the Bank for the debt owed under the November 2007 document and subsequent renewals because that document was not guaranteed by his September 2006 Guaranty. Hanna contends that the November 2007 document was a new loan and not a renewal, modification, or extension of the September 2006 Note.

The record establishes without question that Hanna provided a personal guaranty for the September 2006 Note. Although the November 2007 document did not reference the September 2006 Note or September 2007 renewal as the prior notes, the document also did not purport to release Hanna from his liability under the September 2006 Guaranty or to discharge the $12,231,000 debt owed under the September 2006 Note. It is undisputed that the debt on the September 2006 Note has not been repaid. The Bank presented prima facie evidence of the 2006 Note, the 2009

9

renewal, and Hanna's 2006 Guaranty, which Hanna has failed to rebut.[7] Accordingly, the trial court did not err by granting summary judgment in favor of the Bank because it established that Hanna was liable under the 2006 Guaranty.

2. Hanna also contends that the trial court erred by granting summary judgment to the Bank and by denying summary judgment to him because the Bank increased his risk of harm by issuing the 2009 document, which he contended was a novation.

As an initial matter, Hanna's own guaranty capped his monetary risk at $12,231,000, and so the 2009 document did not increase his bottom line monetary risk. And even assuming that an additional draw of $310,000 increased Hanna's risk because it exposed Southern Gentry to a greater chance of defaulting on the loan, his argument still fails. In paragraph 3 of the Guaranty, Hanna agreed to waive "any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled, to the extent permitted by law."[8]

---

[7] *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795 (1) (b) (709 SE2d 336) (2011) ("A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense.") (punctuation omitted).

[8] Compare with *Upshaw v. First State Bank*, 244 Ga. 433, 434 (260 SE2d 483) (1979) (The new "note represented a new indebtedness, which was a novation in the amount owed by the principal. This novation discharges the sureties.").

10

Although a surety can be discharged by an increase of risk or a novation, OCGA §§ 10-7-21 and 10-7-22, a party may consent in advance to the conduct of future transactions and will not be heard to claim his own discharge upon the occurrence of that conduct. Given the language of the guaranty in this case, no issue of fact existed as to whether [Hanna] was discharged by any increased risk or any purported novation because he agreed in advance to the risk that the [B]ank would take such actions.[9]

"Such waivers are enforceable."[10] "[I]n this case, the construction of the guaranty was a matter of law for the court[, and] the language employed by the parties in the guaranty is plain, unambiguous, and capable of only one reasonable interpretation."[11] OCGA § 10-7-22 clearly is a "legal defense," which the plain language of Hanna's 2006 guaranty served to waive. Hanna, an educated, successful businessperson was free to so contract.

---

[9] (Citations and punctuation omitted.) *Fielbon Dev. Co. v. Colony Bank &c.*, 290 Ga. App. 847, 854 (2) (b) (660 SE2d 801) (2008).

[10] *Hampton Island, LLC v. Asset Holding Co. 5, LLC*, __ Ga. App. __ (3) (c) (740 SE2d 859) (2013), citing *Core LaVista, LLC*, 308 Ga. App. at 795 (1) (b), 796-797 (1) (d) (ii); *Fielbon Dev. Co.*, 290 Ga. App. at 854 (2) (b).

[11] (Citations omitted.) *Brookside Communities, LLC v. Lake Dow North Corp.*, 268 Ga. App. 785, 786 (1) (603 SE2d 31) (2004).

3. To the extent that Hanna contends that the trial court improperly weighed evidence in derogation of the summary judgment standard, his argument is a misreading of the trial court's order, which found undisputed evidence that Hanna's 2006 Guaranty had not been discharged, Southern Gentry had not fully repaid the $12,231,000 debt, and any arguments presented by Hanna were not sufficient to meet the summary judgment standard to create a material question of fact.

4. Finally, Hanna contends that the trial court erred by granting summary judgment in favor of the Bank because the Bank had provided insufficient proof of damages. We agree.

In support of damages, the Bank submitted the affidavit of its senior vice president, Richard Spink, the custodian of the Bank's business records related to claims and loans at issue, who averred that he was personally familiar with the Bank's routine practice for maintaining those business records and calculating amounts owed; that the loan documents and records were made and kept in the ordinary course of business; and that it was the Bank's routine practice to record payments and changes in amounts owed at or near the time the relevant events occurred. His affidavit was accompanied by a "payment history," which appears to be a printout of a screen-capture listing the current balance, accrued interest, late charges, loan fees,

and last payment. He testified that the printouts are bank records reflecting current amounts owed. Hanna contends that this is insufficient to support the trial court's finding of damages because the business records underlying the screen-capture summary do not appear in the record.

As this Court previously explained in *Capital City Developers, LLC v. Bank of North Ga.*,[12]

> [a]lthough a summary prepared in support of a demand for payment may not qualify as a business record under OCGA § 24-3-14, summarized statements of what records show are admissible if the records themselves are accessible to the court and the parties. Here, the Bank's summaries were accompanied by some business records, but a search of the record reveals that crucial underlying business records related to fees and interest were not available to this Court or to Appellants.[13]

Accordingly, we find that the trial court abused its discretion by considering these summaries in its determination of the amounts awarded. Therefore, we affirm judgment as to liability, but reverse the award of damages and remand for further proceedings consistent with this opinion.

---

[12] 316 Ga. App. 624 (730 SE2d 99) (2012).

[13] (Footnote and punctuation omitted.) Id. at 627 (1).

13

*Judgment affirmed in part and reversed in part, and case remanded.*

*McFadden and Boggs, JJ., concur.*