**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2258. ROBERTS v. COMMUNITY & SOUTHERN BANK.

BARNES, Presiding Judge.

The trial court granted summary judgment to Community & Southern Bank ("Community Bank" or the "Bank") on its claim for breach of a personal guaranty against Oscar Roberts, III, and awarded the Bank damages in the principal amount of $667,486.02, plus accrued and "secondary" interest, late charges, contractual attorney fees, and post-judgment interest. On appeal, Roberts contends that the trial court erred in granting summary judgment to the Bank on the issue of his liability under the guaranty because the underlying debt was invalid as a matter of law, or, at a minimum, there were genuine issues of material fact as to its legal validity. Roberts also contends that the -+trial court erred in granting summary judgment to the Bank on the issue of damages because the Bank relied upon an inadmissible "summary" of its business records to prove its damages, and because there was no evidence that the

Bank was entitled to an award of "secondary" interest. For the reasons discussed below, we affirm on condition that the damages awarded to Community Bank be reduced to eliminate "secondary" interest and the portion of contractual attorney fees that was predicated on the award of such interest.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from a trial court's grant of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the record shows that on June 30, 2009, Roberts executed a promissory note in favor of First National Bank of Georgia ("First National") in the principal amount of $800,500 (the "Note"). The Note provided that the principal balance would be due on June 30, 2010. The Note also set forth the applicable interest rate and when interest would accrue, the basis for assessing late charges, and the method for calculating attorney fees in the event of collection efforts made after a default.

2

The Note identified the borrower as the estate of Roberts's father (the "Estate"). The Note was signed by Roberts as attorney-in-fact for his mother, the executrix of the Estate. Roberts had conducted negotiations with First National over the terms of the loan for the Estate, and he represented to First National that he had authority to execute the Note on behalf of his mother in her capacity as executrix. Roberts believed that he had authority to act on behalf of his mother in her capacity as executrix based on a power of attorney that had been signed by her in which she named him as her attorney-in-fact (the "Power of Attorney"). Roberts showed the Power of Attorney to First National.

Upon execution of the Note, Roberts received the $800,500 loan from First National and used the money to purchase undeveloped real estate on behalf of the Estate. Although she was not present at the closing on the loan, Roberts's mother knew that he had executed the Note and did not object to him borrowing money to buy property on behalf of the Estate.

On the same day that he executed the Note, Roberts executed a personal guaranty in favor of First National (the "Guaranty"). Roberts "absolutely and unconditionally guarantee[d]" the Estate's payment of the debt owed to First National as evidenced by the Note. Roberts further agreed in the Guaranty that his obligation

to repay the debt owed by the Estate would "not be affected by the illegality, invalidity, or unenforceability of any notes or agreements evidencing the debt . . . or any other circumstances which make the indebtedness unenforceable against the borrower" and to waive "all defenses and claims that the borrower could assert," except for payment in full.

In January 2010, First National closed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for the failed bank. On January 29, 2010, the FDIC, in its capacity as receiver, transferred substantially all of the assets of First National, including all rights, title, and interest in and to the Note and Guaranty, to Community Bank pursuant to a "Purchase and Assumption Agreement." Consequently, Community Bank is the current owner and holder of the Note and Guaranty.

The Estate ultimately defaulted on the Note, and Roberts did not make any payments to Community Bank on the Guaranty. Following the default, in December 2012, Community Bank brought the present suit on the Note and Guaranty against the Estate and Roberts, seeking the unpaid principal, accrued interest, "secondary interest," late charges, contractual attorney fees, and post-judgment interest.

4

The Estate and Roberts answered, denying liability. Roberts admitted that he had executed the Note and Guaranty and that Community Bank had not been paid the outstanding balance on the Note. However, Roberts denied that Community Bank was entitled to recover for any alleged breach of the Note and Guaranty. According to Roberts, the Note was invalid because he had lacked the power to bind the Estate, and thus there was no enforceable contract obligating the Bank to repay the debt owed to Community Bank. Because there was no underlying enforceable debt obligation that had to be repaid to Community Bank, Roberts alleged that the Guaranty for that debt was likewise invalid.

In October 2013, Community Bank filed a motion for summary judgment against Roberts.[1] The motion was supported by the affidavit of Mark Melnikoff, an officer in the Resolution Management Group for Community Bank (the "Melnikoff Affidavit" or "Affidavit"). In his Affidavit, Melnikoff averred that he had personal knowledge of the Estate's account with Community Bank and of First National's business records as now held by Community Bank. Melnikoff also referenced and

---

[1] Community Bank also moved for summary judgment against the Estate. Because Roberts' mother, the former executrix of the Estate, had died and a new legal representative had not yet been appointed, Community Bank withdrew its motion against the Estate.

sought to authenticate the following documents attached to his Affidavit: the Note, the Guaranty, the Power of Attorney, the Purchase and Assumption Agreement, a report of the loan history for the Note (the "Loan History Report"), and a payoff statement for the Estate's account (the "Payoff Statement"). Melnikoff averred that upon review of those documents, the amount outstanding on the Note was $667,486.02 in principal; $31,538.42 in accrued interest; $84,040.55 in "secondary" interest; $40,197.33 in late charges; and interest accruing thereafter at the rate of 5 percent per year (amounting to $92.70 per day).

After a hearing on Community Bank's motion, the trial court granted summary judgment in favor of the Bank and entered judgment against Roberts in the amounts specified in the Melnikoff Affidavit. This appeal followed.

1. In challenging the trial court's grant of summary judgment to Community Bank on the issue of liability, Roberts contends that the court erred in concluding that, as a matter of law, he was obligated to repay the Note based on the Guaranty. According to Roberts, as guarantor of the Note, he is entitled to assert any defenses that are available to the Estate regarding the enforceability of the Note. And, Roberts argues, the Note is unenforceable as a matter of law, or, at a minimum, there is a genuine issue of material fact regarding its enforceability. Specifically, Roberts

6

argues that the underlying debt and Note are invalid and unenforceable because he lacked power to bind the Estate, given that he was never appointed to serve as legal representative of the Estate by the probate court, and given that the Power of Attorney executed by his mother allegedly did not authorize him to act on her behalf in her capacity as executrix of the Estate. Roberts also argues that the Note is null and void because the probate court never authorized the Estate to borrow money.

We are unpersuaded by Roberts's arguments because under the terms of the Guaranty, he expressly waived any defenses he may have had to the validity and enforceability of the underlying debt and Note. As pointed out by Roberts, the general rule is that, apart from certain personal defenses such as infancy, incapacity, or bankruptcy, a "guarantor may assert all defenses to a contract which would be available to his principal." *Thomasson v. Pineco, Inc.*, 173 Ga. App. 794, 795 (328 SE2d 410) (1985). But the general rule does not apply where the guarantor has waived his right to assert those defenses. *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 436-437 (1) (280 SE2d 842) (1981). As we have explained, "[a] guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor." *Baby Days, Inc. v. Bank of Adairsville*, 218 Ga. App. 752, 755 (3) (463

SE2d 171) (1995). See *HWA Properties v. Community & Southern Bank*, 322 Ga.

App. 877, 887 (2) (b) (746 SE2d 609) (2013). That is what occurred here.

In the Guaranty, Roberts agreed to the following:

OBLIGATIONS INDEPENDENT – I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. *My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity, or unenforceability of any notes or agreements evidencing the debt,* the violation of any applicable usury laws, forgery, *or any other circumstances which make the indebtedness unenforceable against the borrower*.

(Emphasis supplied.) Roberts further agreed:

WAIVER – *I also waive, to the extent permitted by law*, all notices, *all defenses and claims that the borrower could assert*, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, *and all other defenses to the debt, except payment in full.*

(Emphasis supplied.)

In light of these clear and unambiguous provisions of the Guaranty, Roberts

waived his right to assert any defense available to the Estate pertaining to the

illegality, invalidity, or unenforceability of the underlying debt and Note.

8

Accordingly, the express terms of the Guaranty precluded Roberts from challenging the underlying debt and Note on the ground that he lacked authority to bind the Estate, or from arguing that the Note was invalid because the probate court never authorized the Estate to borrow money. The trial court therefore did not err in granting summary judgment to Community Bank on the issue of Roberts's liability for the underlying debt and Note under the terms of the Guaranty. See, e.g., *Community & Southern Bank v. DCB Investments*, 328 Ga. App. 605, 613-614 (2) (760 SE2d 210) (2014) (defendants expressly waived any and all defenses to their liability for certain promissory notes); *Heath v. Boston Capital Corporate Tax Credit Fund VIII*, 253 Ga. App. 537, 539 (2) (559 SE2d 743) (2002) (defendants expressly waived in their guaranty any right to challenge the validity or enforceability of the underlying transaction giving rise to the guaranty agreement); *Vickers*, 158 Ga. App. at 438 (1) (waiver provision of guaranty precluded guarantor from raising defense that otherwise would have created "an issue of material fact precluding the grant of summary judgment").

2. In challenging the grant of summary judgment to Community Bank on the issue of damages, Roberts contends that the Bank relied upon an inadmissible "summary" of its business records to prove its damages. In support of damages,

Community Bank submitted the Melnikoff Affidavit. In his Affidavit, Melnikoff relied on, among other documents, an attached Loan History Report as the basis for his calculations and sought to authenticate it as a business record of Community Bank. Roberts argues, however, that the Loan History Report was a "summary" that was inadmissible and could not be relied upon by Melnikoff because the underlying business records upon which it was based were never made available to him to review for their accuracy. We are unpersuaded because the trial court was entitled to find that the Loan History Report was a business record rather than a summary.

"Admissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally." (Citation and punctuation omitted.) *Koules v. SP5 Atlantic Retail Ventures, LLC*, 330 Ga. App. 282, 285 (2) (767 SE2d 40) (2014). "Affidavits purporting to establish the amount of a debt without accompanying business records, where appropriate, are insufficient" to sustain summary judgment. (Punctuation and footnote omitted.) *Walter R. Thomas Assoc. v. Media Dynamite*, 284 Ga. App. 413, 415 (1) (643 SE2d 883) (2007). Creating an exception to the hearsay rule for business records, Georgia's new evidence code provides:

Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness and subject to the provisions of Chapter 7 of this title, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses [is admissible], if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification. . . .

OCGA § 24-8-803 (6).[2] "It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation

_____

[2] Because Community Bank filed its motion for summary judgment in October 2013, Georgia's new evidence code applies. See Ga. Laws 2011, Act 52, § 101 (new evidence code "shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date").

indicate trustworthiness." *United States v. Franco*, 874 F.2d 1136, 1139 (7th Cir. 1989).[3] See OCGA § 24-1-104 (a).

Georgia's new evidence code also allows for the admission of summaries of voluminous business records under certain circumstances. OCGA § 24-10-1006 provides in relevant part:

> The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place.

As made clear by the plain language of the statute, one of the requirements for the admission of a summary is that the underlying records upon which the summary is based must be made accessible to the other parties for examination or copying. See *Hanna v. First Citizen Bank & Trust Co.*, 323 Ga. App. 321, 328-329 (4) (744 SE2d

---

[3] "Given the similarity between Georgia's new evidence code and the Federal Rules of Evidence it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." (Citation and punctuation omitted.) *Williams v. State*, 328 Ga. App. 876, 879 (1), n.14 (763 SE2d 261) (2014).

894) (2013).[4] See also *United States v. Bray*, 139 F.3d 1104, 1109-1110 (6th Cir. 1998) (discussing requirements for admission of a summary of records). "The purpose of this requirement is to provide the opposing party who desires to attack the authenticity or accuracy of [the] . . . summary . . . with an opportunity to prepare for cross-examination" or to offer other evidence in rebuttal. *Bray*, 139 F.3d at 1109.

Citing to *Capital City Developers*, 316 Ga. App. at 625-628 (1), Roberts contends that the Loan History Report was a summary rather than a business record. In *Capital City Developers*, the plaintiff bank moved for summary judgment against the defendant debtors and submitted the affidavit of the custodian of its business records in an effort to prove the amounts owed on the loan in question. Id. at 626 (1). Attached to the affidavit were "computer printouts listing the current balance, daily interest charges, late charges, and other fees" owed on the loan, which the custodian averred were business records of the bank. Id. We concluded, however, that the printouts were "summaries" of business records reflecting current amounts owed on

---

[4] Although the admissibility of summaries is now codified in OCGA § 24-10-1006, Georgia applied a similar rule before adoption of the new evidence code. See, e.g., *Stewart v. State*, 246 Ga. 70, 73-74 (3) (268 SE2d 906) (1980); *Capital City Developers, LLC v. Bank of North Ga.*, 316 Ga. App. 624, 627 (1) (730 SE2d 99) (2012); *Morris v. Nat. W. Life Ins. Co.*, 208 Ga. App. 443, 444 (1) (c) (430 SE2d 813) (1993).

the loan and were inadmissible because "crucial underlying business records related to fees and interest were not made available to" the court or the defendant debtors. Id. at 627 (1). Accordingly, we concluded that the trial court erred in considering the "summaries" in its determination of the amount owed on the loan and reversed the grant of summary judgment to the bank on the issue of damages. Id. at 628 (1).

*Capital City Developers* stands for the proposition that a document that simply lists the current balance, accrued interest, and fees owed on a bank loan at the time of the litigation is not a business record but rather a "summary." See *Hanna*, 323 Ga. App. at 328 (4) (citing *Capital City Developers* and concluding that "a printout of a screen-capture listing the current balance, accrued interest, late charges, loan fees, and last payment" was a "summary" of current amounts owed rather than an original business record). In contrast, we have treated reports that provide a detailed transaction history of a loan as business records, not as summaries. See *Dawson Pointe, LLC v. SunTrust Bank*, 312 Ga. App. 338, 339 (718 SE2d 570) (2011) (trial court acted within its discretion in admitting "document setting forth the history of the loan" as a business record); *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 199 (3) (715 SE2d 491) (2011) (business records attached to affidavit of bank portfolio manager, including "payment history" for the loan, supported trial

14

court's grant of summary judgment to bank); *Ishak v. First Flag Bank*, 283 Ga. App. 517, 519 (642 SE2d 143) (2007) (trial court acted within its discretion in admitting "loan history report [that] itself included the effective date and the entered date for each of the transactions listed" as a business record) (punctuation omitted). Although these cases were decided under Georgia's former evidence code, we discern no basis for departing from their logic here. Moreover, our treatment of loan or payment history reports as business records in those cases is consistent with the fact that the business records exception specifically allows for the admission of a "data compilation, in any form," OCGA § 24-8-803 (6), and a trial court is entitled to exercise its discretion and find that such reports fall within the "data compilation" category of business records. See generally *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) (holding that "computer data compilations may be business records themselves, and should be treated as any other record of regularly conducted activity"); *WGNX, Inc. v. Gorham*, 185 Ga. App. 489, 490 (2) (a) (364 SE2d 621) (1988) (holding that "computer printout of a list of the dates on which the commercials [at issue] aired and the cost of each airing" was properly admitted as business record).

In contrast to the document at issue in *Capital City Developers*, the Loan History Report at issue here provided a description of each transaction relating to the Estate's loan from its inception, along with a corresponding "posting date" for each transaction, the transaction amount, and any change to the principal balance resulting from the transaction. Thus, the Loan History Report, like the loan or payment history reports discussed in previous cases, was admissible as a business record. See *Dawson Pointe, LLC*, 312 Ga. App. at 339; *Kensington Partners, LLC*, 311 Ga. App. at 199 (3); *Ishak*, 283 Ga. App. at 519.

In reaching this conclusion, we reject Roberts's additional argument that the Loan History Report must be treated as a summary, rather than an a business record, because some of the transactions listed on the report occurred when Community Bank's predecessor, First National, owned the loan. According to Roberts, the fact that some of the transactions occurred when First National owned the loan means that the Loan History Report "is by definition a summary of some other party's records of the transactions taking place during that time frame" and thus was inadmissible as a business record. But, as previously noted, the business record exception applies to "data compilations" such as loan or payment history reports prepared by a bank. And a successor bank can rely upon and integrate into its own business records its

16

predecessor's business records so long as a proper foundation is laid under OCGA § 24-8-803 (6).[5] See *Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 327 Ga. App. 245, 249 (2) (758 SE2d 145) (2014). Roberts's argument thus is misplaced, and the trial court properly admitted the Loan History Report as a business record of Community Bank rather than as a summary.[6]

[5] In the trial court and on appeal, Roberts's argument has been that the Loan History Report is a "summary" on its face; Roberts has never addressed or provided any legal argument regarding the sufficiency of the *foundation* laid by Melnikoff for the admission of the Loan History Report as a business record of Community Bank. Any potential arguments that could have been raised by Roberts regarding the sufficiency of the foundation for the admission of the Loan History Report as a business record thus have been waived. See *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 798 (2), n. 3 (697 SE2d 888) (2010) (arguments opposing summary judgment not raised in trial court will not be considered on appeal); *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 188 (8) (558 SE2d 411) (2001) (argument abandoned on appeal if not properly supported by citation to legal authorities or to the record).

[6] In the same enumeration of error, Roberts argues that the Payoff Statement attached to the Melnikoff Affidavit constituted an inadmissible summary rather than a business record and that the trial court erred in considering it. We need not resolve whether the Payoff Statement was admissible because the same pertinent information contained in it could be gleaned by the trial court from the Loan History Report. Hence, any error by the trial court in considering the Payoff Statement as part of the record on summary judgment was harmless. See *Pruette v. Phoebe Putney Memorial Hosp.*, 295 Ga. App. 335, 339 (1), n. 5 (671 SE2d 844) (2008) (trial court's consideration of allegedly inadmissible evidence was harmless where it was cumulative of other admissible evidence). Furthermore, even if the Payoff Statement and the portion of the Melnikoff Affidavit that relied upon it were inadmissible, that fact would not invalidate the remaining portions of the Affidavit. See *Ware*, 327 Ga.

3. Lastly, Roberts contends that the trial court erred in granting summary judgment to Community Bank on the issue of damages because the Bank provided insufficient proof that, in addition to accrued interest, $84,040.55 in "secondary" interest was owed on the underlying debt. Roberts maintains that the Note and other business records of Community Bank make no mention of and provide no basis for an award of "secondary" interest.

Community Bank concedes that the judgment should be reduced to eliminate the "secondary" interest and the portion of attorney fees predicated on the award of such interest. Accordingly, we affirm on condition that the trial court reduce the judgment to reflect the amount conceded by Community Bank to be the correct sum. See *AKA Mgmt. v. Branch Banking & Trust Co.*, 275 Ga. App. 615, 621 (3) (621 SE2d 576) (2005); *English Restaurant v. A.R. II*, 194 Ga. App. 639, 642 (3) (391 SE2d 462) (1990).

*Judgment affirmed on condition. Boggs and Branch, JJ., concur*.

---

App. at 250 (2).