**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 3, 2022**

# In the Court of Appeals of Georgia

A22A1512. PRAULTSHELL, INC. et al. v. RIVER CITY BANK.

PHIPPS, Senior Appellate Judge.

In this action to recover on a promissory note and guaranty, defendant-appellants PraultShell, Inc. and Trent Prault appeal from the grant of summary judgment to plaintiff River City Bank. The appellants contend that: (i) disputed issues of fact remain as to (a) their defenses of impossibility or impracticality of performance and frustration of purpose, (b) the proper amount of damages, and (c) the attorney fees to which River City is entitled; and (ii) the trial court's summary judgment ruling was premature. For the reasons that follow, we discern no reversible error and affirm.

Viewed in the light most favorable to the appellants, the nonmovants, see *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827)

(2022), the record shows that, on March 19, 2020, PraultShell executed a promissory note in favor of River City in the amount of $952,473.82, with a maturity date of April 3, 2021 (the "Note"). PraultShell obtained the underlying loan to construct and operate a brew pub and restaurant, and the debt was secured by a lien on, inter alia, two parcels of real property (including all fixtures, equipment, and furniture therein) where the establishment was located. Prault and defendants Roger Shell, Jay Shell Entertainment, Inc., and Rome City Brewing Co., LLC each executed an "absolute, present, unconditional, and continuing" guaranty of payment of the Note.[1] When PraultShell stopped making payments on the Note in 2021, River City sent a demand letter to the defendants declaring the debt in default. None of the defendants thereafter satisfied their obligations under the Note or guaranties.

Consequently, in July 2021, River City sued the defendants for breach of the Note, breach of the guaranties, and attorney fees. River City thereafter moved for summary judgment on all of its claims against the appellants. Following a hearing, the trial court granted River City's motion. As relevant here, the court: (i) rejected the

[1] The Note identifies Prault and Shell as PraultShell's president/secretary and vice president/treasurer, respectively. While Shell, Jay Shell Entertainment, and Rome City Brewing were named as defendants in this action, they did not file answers or defensive pleadings within the time allowed by law, and the trial court entered default judgment against them. They are not parties to this appeal.

appellants' claims of impossibility or impracticality of performance and frustration of purpose; (ii) concluded that River City adequately established its damages; (iii) rejected the appellants' claim that River City's right to recover attorney fees was limited to actual fees incurred; and (iv) awarded River City a total judgment of $918,031.20 (including principal, interest, late charges, and attorney fees). This appeal followed.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry*, 362 Ga. App. at 460.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e).

1. The appellants first contend that disputed issues of fact remain as to (a) their defenses of impossibility or impracticality of performance and frustration of purpose,

3

(b) the amount of damages to which River City is entitled, and (c) the amount of attorney fees to which River City is entitled. We address each claim in turn.

(a) *Defenses*. The appellants argue that they were forced to close the brew pub and restaurant as a result of COVID-19-related executive orders temporarily closing bars and restaurants and later limiting seating capacity in such establishments, as well as "staffing and other shortages [that] made it virtually impossible to operate" such businesses. They further maintain that the closing of the brew pub and restaurant made it "impossible to repay the loan at issue per its terms." Consequently, according to the appellants, disputed questions of fact remain as to their defenses of impossibility or impracticality of performance and frustration of purpose. We disagree.

"Where, as here, a plaintiff moves for summary judgment, it has the burden of establishing the absence or non-existence of any defense raised by the defendant." *Allen v. CFYC Constr.*, 354 Ga. App. 890, 894 (2) (842 SE2d 297) (2020) (citation and punctuation omitted). "A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor." *L. D. F. Family Farm v. Charterbank*, 326 Ga. App. 361, 364 (1) (756 SE2d 593) (2014) (citation and punctuation omitted). An absolute guaranty similarly is defined as "[a]n

4

unqualified promise that the principal will pay or perform" and as "[a] guarantor's contractual promise to perform some act for the creditor — such as paying money or delivering property — if the principal debtor defaults." Black's Law Dictionary 850 (11th ed. 2019).

(i) *Impossibility.* "[T]he cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract," because "the law obligates us to enforce the plain terms of the contract into which the parties entered." *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 118 (2) (746 SE2d 680) (2013). Nevertheless, "[i]mpossible, immoral, and illegal conditions are void and are binding upon no one." OCGA § 13-3-5. Similarly, "[i]f performance of the terms of a contract becomes impossible as a result of an act of God, such impossibility shall excuse nonperformance, except where, by proper prudence, such impossibility might have been avoided by the promisor." OCGA § 13-4-21. Consequently, "impossibility of performance is a defense to the enforcement of a contract." *Allen*, 354 Ga. App. at 894 (2).

An impossibility defense predicated on mere financial inability, however, fails as a matter of law. *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 547 (4) (702 SE2d 770) (2010).

[S]ubjective impossibility, that is, impossibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation. Accordingly, the fact that one is unable to perform a contract because of his inability to obtain money, whether due to his poverty, a financial panic, or failure of a third party on whom he relies for furnishing the money, will not ordinarily excuse nonperformance, in the absence of a contract provision in that regard.

Id. at 547-548 (4) (citation and punctuation omitted); accord *Calabro v. State Med. Ed. Bd.*, 283 Ga. App. 113, 115 (1) (640 SE2d 581) (2006) ("[I]mpossibility of performance of a contract covenant personal to the promissor does not excuse nonperformance.") (citation and punctuation omitted).

Here, whether the appellants had no choice but to close the brew pub and restaurant and whether it was objectively "impossible" for them to fulfill their obligations under the Note and guaranty are two separate issues. Assuming, without deciding, that it was "impossible" to continue to operate the brew pub and restaurant for the reasons alleged, it does not necessarily follow that it was "impossible" for the appellants to have repaid their indebtedness. And even if that were the case, it would establish no more than financial inability, which, under *Hampton Island, LLC*, constitutes mere "subjective impossibility" and is insufficient to excuse

6

nonperformance.[2] 306 Ga. App. at 547-548 (4). If the rule were otherwise, the financial inability of any borrower to make payments under any loan would excuse nonperformance, an absurd result. Consequently, the trial court properly rejected the appellants' defense of impossibility.[3] Compare id. at 542, 547-548 (4) (in a case involving a claim for specific performance of a contract for the sale of land, the defendant-buyer's "alleged inability to pay . . . could not serve as a basis for its defense of impossibility, and the trial court properly granted summary judgment to the [plaintiff-sellers]"), and *Elavon, Inc. v. Wachovia Bank*, 841 FSupp.2d 1298, 1305-1306 (IV) (A) (1) (N.D. Ga. 2011) (rejecting a claim that the 2008 economic downturn excused a bank's failure to perform its obligations under a contract with a provider of merchant processing services), with *Allen*, 354 Ga. App. at 894-895 (2) (concluding that disputed issues of fact remained as to the viability of the defendant's claim that his inability, to date, to get certain property subdivided rendered it

---

[2] We note that the appellants identify no record evidence suggesting that it was "impossible" for any pub or restaurant to continue to operate in Georgia because of the COVID-19 pandemic or "staffing and other shortages." Consequently, any purported "impossibility" in that regard also is subjective to the appellants.

[3] The appellants' reliance on two New York trial court decisions is misplaced because, as stated above, financial inability does not give rise to a defense of impossibility under Georgia law. See *Hampton Island, LLC*, 306 Ga. App. at 547 (4).

impossible to fulfill his contractual obligation to convey a portion of that property, insofar as a disputed factual issue also remained as to what constituted a reasonable time for performance), and *Miller*, 323 Ga. App. at 124 (2) (concluding that the unavailability of an arbitral forum required by an arbitration agreement rendered the agreement impossible to enforce).

(ii) *Impracticality.* The defense of impracticality of performance is rooted in Uniform Commercial Code provisions governing the sale of goods, and thus has no application here. See OCGA § 11-2-615 (a) (providing that "[d]elay in delivery or nondelivery in whole or in part by a seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable" by certain contingencies); *Calabro*, 283 Ga. App. at 115 (1) (concluding that impracticality of performance was not available as a defense in a suit to enforce a contract whereby the plaintiff provided the defendant with a scholarship in exchange for her promise to practice medicine in a low-population community, because "[t]he defense of impracticability contemplates the impracticability of performance by a seller of commercial goods"); *Elavon, Inc.*, 841 FSupp.2d at 1306-1307 (IV) (A) (1) (concluding that impracticality of performance was not available as a defense in a suit to enforce a contract for services); see also generally *Mansfield Propane Gas Co. v.*

8

*Folger Gas Co.*, 231 Ga. 868, 869-871 (204 SE2d 625) (1974) (addressing Code Ann. § 109A-2–615, the predecessor to OCGA § 11-2-615); *Swift Textiles v. Lawson*, 135 Ga. App. 799, 802-807 (219 SE2d 167) (1975) (same).

(iii) *Frustration of purpose.* Finally, the appellants have not cited, and research has not revealed, any Georgia appellate decisions applying the defense of frustration of purpose to a scenario similar to the facts in this case. Rather, that defense has been applied only where nonperformance results from the conduct of another party to the contract. See *L. D. F. Family Farm*, 326 Ga. App. at 366 (3) (concluding that frustration of purpose — alleged to be premised on a faltering housing market — was not available as a defense in a suit on a promissory note, because the defendant-borrower's nonperformance was not caused by the conduct of the plaintiff-lender) (citing OCGA § 13-4-23 ("If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance.")); see also generally *Ga. 20 Properties v. Tanner*, 255 Ga. App. 6, 10 (2) (564 SE2d 459) (2002) ("A party cannot avoid the obligations of a contract by frustrating the performance of a condition precedent."). Consequently, absent some indication that River City's conduct somehow frustrated the purpose of the Note, we decline to apply that defense here. The appellants therefore have not met their burden

9

of showing that the trial court erred when it rejected their defenses of impossibility or impracticality of performance and frustration of purpose, and we affirm the court's rulings to that effect.

(b) *Damages.* In support of its motion for summary judgment, River City submitted the affidavits of its senior vice president Jonathan Jones. Jones attested that: (i) he is personally familiar with the loan file in this case; (ii) PraultShell defaulted under the Note by failing to make payments as due; (iii) as a result, as of September 2021, PraultShell and Prault owed River City $815,495.68, excluding attorney fees and collection costs; and (iv) interest on the Note continued to accrue at a rate of $102.78 daily. River City corroborated those figures by submitting a copy of PraultShell's payment history, which lists each loan transaction and the ensuing loan balance by date between August 11, 2020 (when, it appears, the first payment was made), and April 13, 2021 (when, according to Jones, the last payment was made), as well as a River City payoff statement for the loan. Jones further attested that: (i) the payment history and payoff statement were business records of River City; (ii) he is the custodian of such records; and (iii) the records were (a) made at or near the time when the amounts came due; (b) made by, or from information transmitted by, a person with personal knowledge of the Note and a business duty to

10

report; and (c) kept in the course of River City's regularly conducted business activity and updated as a regular practice.

The appellants maintain that the payoff statement and payment history are inadmissible hearsay because they are mere "summaries" of the underlying business records needed to judge the accuracy of the figures in each document. As a result, the appellants contend, River City has submitted insufficient evidence to establish its damages as a matter of law. We disagree.

"Admissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally. Affidavits purporting to establish the amount of a debt without accompanying business records, where appropriate, are insufficient to sustain summary judgment." *Roberts v. Community & Southern Bank*, 331 Ga. App. 364, 368-369 (2) (771 SE2d 68) (2015) (citations and punctuation omitted). Notably, Georgia's Evidence Code provides for the admissibility of business records by excluding the following from the rule barring the admission of hearsay:

> Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness and subject to the provisions of Chapter 7 of this title, [addressing opinions and expert testimony,] a memorandum, report, record, or data compilation, in any form, of acts

11

[or] events . . . , if (A) made at or near the time of the described acts [or] events . . . ; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian . . . .

OCGA § 24-8-803 (6). "It is within the trial court's discretion to determine whether a proper foundation was laid for application of the business records exception to a particular document and whether the circumstances of the document's preparation indicate trustworthiness." *Roberts*, 331 Ga. App. at 369 (2) (citation and punctuation omitted).

The appellants' claim that the payoff statement and payment history are inadmissible "summaries" essentially ignores Jones's affidavits, which the trial court was entitled to credit absent other record evidence — which the appellants have not identified — calling into question the veracity of the affidavits.[4] See *Roberts*, 331 Ga. App. at 366, 371-372 (2) (in a suit on a personal guaranty of a promissory note, a report of the loan history that listed each transaction and ensuing principal balance

---

[4] The appellants do not challenge the admissibility of Jones's affidavits.

12

by date and was authenticated by a bank officer with personal knowledge of the account was admissible as a business record); *Angel Bus. Catalysts v. Bank of the Ozarks*, 316 Ga. App. 253, 255-257 (1)-(2) (728 SE2d 854) (2012) (in a suit on a promissory note, the affidavit of the lender's special assets manager regarding his knowledge of the origin of payoff statements listing the total amounts owed by each guarantor was sufficient to qualify the statements as business records); *Formaro v. SunTrust Bank*, 306 Ga. App. 398, 400 (1) (702 SE2d 443) (2010) ("Generally, the mere statement of the affiant that the testimony given comes from personal knowledge is sufficient.") (citation and punctuation omitted); *Whitaker v. Trust Co. of Columbus*, 167 Ga. App. 360, 361 (2) (306 SE2d 329) (1983) ("A statement in an affidavit that it is based upon personal knowledge generally is sufficient, especially when its averments are supported by attachments to the affidavit.").

In that regard, the appellants' reliance on *Capital City Developers v. Bank of North Ga.*, 316 Ga. App. 624 (730 SE2d 99) (2012), is misplaced. In that decision, we held that the trial court erroneously relied on summaries of the underlying business records purporting to show the balance of the debt at issue, interest calculations, and fee assessments, to establish damages in a suit on a promissory note. Id. at 625-628 (1). Crucially, there is no indication in *Capital City* that a person with

13

direct knowledge of the loan at issue both provided the information on which damages were calculated and fully authenticated the corroborating business records under OCGA § 24-8-803 (6), as is the case here.[5] See id. *Capital City* thus is not controlling in this case. All in all, the appellants have not met their burden of showing that disputed issues of fact remain as to damages, and we affirm the trial court's ruling in that regard.

(c) *Attorney fees.* The trial court awarded River City OCGA § 13-1-11 (a) (2) attorney fees consisting of 15 percent of the first $500 of principal and interest owing on the Note and 10 percent of the remaining indebtedness, for a total of $83,520.94. The appellants contend that the court was authorized to award only reasonable attorney fees actually incurred. We disagree.

As relevant here, OCGA § 13-1-11 provides:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an

---

[5] Indeed, our 2012 decision in *Capital City* predated the current Evidence Code, which went into effect in 2013. See Ga. L. 2011, pp. 99, 214, § 101.

14

attorney after maturity, subject to subsection (b) of this Code section[6] and to the following provisions:

. . .

(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00 . . . .

Here, the Note provides: "If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees. Attorney fees shall not exceed 15 percent of the principal and interest owing." Prault's guaranty similarly provides:

Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to

---

[6] OCGA § 13-1-11 (b) governs petitions filed by a party required to pay attorney fees seeking a determination as to the reasonableness of such fees. The record contains no indication that any such petition was filed here.

15

advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto . . . .

While Prault's guaranty generally requires him to pay expenses "incurred" in enforcing rights thereunder, the plain language of the more specific, subsequent provision governing attorney fees is not limited to fees actually incurred.[7] See generally *Rodgers v. First Union Nat. Bank*, 220 Ga. App. 821, 824 (2) (470 SE2d 246) (1996) (holding that a guaranty provision entitling a lender to "reasonable attorneys' fees actually incurred" and further providing that "15% of the total amount(s) due hereunder and remaining unpaid shall be deemed to be the 'reasonable attorneys' fees'" unambiguously authorized recovery of 15 percent of the amount due). Thus, because both the Note and Prault's guaranty provide for the payment of reasonable attorney fees without either identifying a formula to calculate such fees or limiting the amount to fees actually incurred, both provisions must be construed

---

[7] Regardless, Prault's liability under his guaranty is derivative of PraultShell's liability under the Note, which obligates PraultShell to pay "all costs of the Lender in connection" with proceedings to enforce the Note, "including reasonable attorneys' fees."

16

to mean 15 percent of the first $500 of principal and interest and 10 percent of the remaining principal and interest under OCGA § 13-1-11 (a) (2).

While neither party has identified, and research has not revealed, any Georgia appellate decisions applying OCGA § 13-1-11 (a) (2) to a note or other evidence of indebtedness that provides for the payment of reasonable attorney fees but neither specifies a formula to calculate such fees nor limits the amount to fees actually incurred, the result in this case follows from the plain, unambiguous language of the statute. See *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (when considering the meaning of a statute, a court must "presume that the General Assembly meant what it said and said what it meant" and afford the statutory text its "plain and ordinary meaning") (citations and punctuation omitted); compare *Hamilton State Bank v. Kelly Capital Investments*, 335 Ga. App. 252, 265 (3) (779 SE2d 757) (2015) ("[W]here a Note specifies that a collecting party may only recover attorney fees actually incurred, the collecting party must establish that it has actually incurred fees in that amount in order to recover the maximum.") (citation and punctuation

omitted) (physical precedent only). We therefore affirm the trial court's attorney fee award.[8]

2. In their final, one-sentence enumeration of error, the appellants contend, without elaboration: "At a minimum, pursuant to OCGA § 9-11-56 (f), the trial court should have deferred ruling on [River City's] motion for summary judgment until there could be further discovery on these and other issues." But the appellants elaborate no arguments in support of this conclusory assertion, which we deem abandoned. See Court of Appeals Rule 25 (d) (1); *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal."); *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted); *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (legal analysis, at a minimum, requires "a discussion of the appropriate law as applied to the relevant facts," and "appellate judges should not

---

[8] The appellants do not challenge, and we therefore express no opinion on, the accuracy of the trial court's calculations.

18

be expected to take pilgrimages into records in search of error without the compass of citation and argument") (citation and punctuation omitted).

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*