**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0440. PERFORMANCE FOOD GROUP, INC., v. DAVIS.        DO-015

DOYLE, Presiding Judge.

This case arises from a petition for interpleader, OCGA § 48-4-5 (b), filed on October 14, 2016, by Terresa Davis, in her capacity as Pierce County Tax Commissioner, following the sale of 534 Gordon Street ("the Property") at a tax sale from which excess funds were generated. The two respondents to the interpleader were PrimeSouth Bank ("the Bank") and Performance Food Group ("PFG"). The Bank moved for summary judgment, asserting a claim for the excess funds, and after a hearing, the trial court granted the Bank's motion. PFG appeals, arguing that the trial court erred by granting the Bank's motion because (1) the Bank's purchase of the Property at the tax sale and the Bank's subsequent foreclosure on its deed to secure debt after the tax sale resulted in a merger of estates such that the Bank's security

deed no longer had priority for purposes of the excess tax sale funds; (2) the result that the Bank gets both the property and the excess tax sale funds is inequitable; and (3) the Bank's motion for summary judgment was not supported by competent evidence of the existing debt. Because the Bank's motion was not supported by competent evidence, we are constrained to reverse the grant of summary judgment in its favor.

> Summary judgment is proper if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from a trial court's grant of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.[1]

Viewed in this light, the record shows that Ashley D. Lee and Dana Larson Bowen appeared as record title holders to the Property, for which $18,385.16 in delinquent property tax was owed. On July 5, 2016, Davis held a tax sale of the property, which generated $89,100 and an excess of $70,714.84, of which funds

---

[1] (Citations and punctuation omitted.) *Roberts v. Community & Southern Bank*, 331 Ga. App. 364 (771 SE2d 68) (2015).

Davis notified the Bank, PFG, and various other interested parties.[2] At the time of the sale, the Bank held a deed to secure debt on the property, which originally was filed in 2007 and was modified in 2012 in an amount over $400,000,[3] and PFG held a lien based on a writ of fieri facias in the amount of $74,292.90 filed in 2014.

In support of its motion for summary judgment, the Bank submitted the affidavits of bank employees Tony Crews and Chris Sinclair to support the amount remaining unpaid on the note; Crews and Sinclair, however, merely averred that Bowen and Lee "owed more than Four Hundred Thousand ($400,000) to [the] Bank under the Promissory Note at the time of the Tax Sale." Neither affidavit contains a reference to or attaches any Bank documents to support this outstanding balance, and neither affidavit contains an averment to a specific outstanding balance at the time the affidavits were prepared.

Prior to the end of the redemption period, the Bank foreclosed on the Property pursuant to its deed to secure debt and purchased the property for $20,000.

---

[2] Huddle House, Inc., also responded to the interpleader action with claims on the excess funds, but they have not appealed from the trial court decision.

[3] In its claim letter, the Bank contended that the promissory note was for an "original principal amount of $405,278.14" and as of August 1, 2016, "more than" $400,000 was owed.

3

1. As an initial matter, we note that the trial court's order, which was entered on June 20, 2017, relied on this Court's decision in *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*,[4] for the proposition that the distribution of excess funds should be made based on the right to the funds at the time of the tax sale. But that decision had already been disapproved of in part by the Georgia Supreme Court after it granted certiorari in that case.[5]

PFG's argument that the Bank's purchase of the tax deed merged with its deed to secure debt after the tax sale, thereby making first in line PFG's claim to the excess tax sale funds via its lien, is without merit.

> The doctrine of merger applies where the legal and equitable interests in property become merged in the same person. Unless there is an agreement to the contrary or it is the intention of the party in whom the equitable and legal estates unite that there be no merger, the merger results. The person contending that no such merger took place has the burden of proof.[6]

---

[4] 335 Ga. App. 318 (779 SE2d 436) (2015).

[5] See *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 301 Ga. 131, 135-136 (2) (800 SE2d 362) (2017) ("*DLT List II*").

[6] *Barron Buick v. Kennesaw Co.*, 105 Ga. App. 451, 454-455 (2) (124 SE2d 918) (1962).

4

After a tax sale of property encumbered by liens, the purchaser of the tax deed has a defeasible fee in the property, which becomes a fee simple interest if the property is not redeemed during the statutory period after the tax sale.[7] As for the excess proceeds from the tax sale, they should have been distributed first to the Bank, as the trial court found, and then to any other recorded lien holder, such as PFG.[8] No case law supports PFG's argument that the Bank's first-priority security lien was merged into their tax deed purchase for purposes of divesting the Bank's priority claim to the excess funds. Indeed, case law supports the opposite conclusion. "[If] the creditor buys in the property at the sale to protect himself, it would be unreasonable to hold that, by uniting the legal and equitable interest, he intended to advance a subordinate claim to priority over his own claim."[9] Moreover, at the time that the Bank purchased the tax deed to the property, it did not own the right of redemption — the other interested parties including PFG could have redeemed the property, thereby divesting the tax deed from the Bank and returning the interest via quit-claim

---

[7] See *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 42-43 (1) (586 SE2d 235) (2003).

[8] See *DLT List II*, 301 Ga. at 134-136 (2).

[9] *Barron Buick*, 105 Ga. App. at 456-457 (2).

5

deed to Lee and Bowen, leaving the Bank's security deed in place in the order of priorities going forward.[10]

We also reject PFG's contention that the Bank's later security deed foreclosure on the property prohibited it from claiming the proceeds. At the time of the tax sale, the Bank's security deed was in force and in first priority position. What may have occurred after that time does not affect the proper payment of excess funds in the event that the Bank's interest was valid at the time of the tax sale.[11]

We also disagree with PFG's argument that the result is inequitable.[12] PFG could have bid on the Property at the Bank's security deed foreclosure sale in order to gain unencumbered ownership of the Property and later sell it to cover the purchase price and lien amounts, but it chose not to take that risk.[13] PFG also could have redeemed the property, but in that case, the result would have been that the excess proceeds were paid to the Bank for its security deed, and the Bank would have had

---

[10] See *Nat. Tax Funding*, 277 Ga. App. at 42-43 (1).

[11] See *DLT List II*, 301 Ga. at 134-136 (2).

[12] See *Barron Buick*, 105 Ga. App. at 456-457 (2) ("In equity[,] the rules of law are not followed, and the doctrine of merger is not favored.") (punctuation omitted).

[13] See *Ray v. Atkins*, 205 Ga. App. 85, 89 (3) (421 SE2d 317) (1992), quoting *Sweat v. Arline*, 186 Ga. 460, 461 (2) (197 SE 893) (1938).

a super lien for the tax-sale price on the property going forward, which would have been higher in priority than that of PFG.[14] In these circumstances, PFG's lien, as usually is the case with subordinate interests, goes unpaid via the excess proceeds and the proceeds from the later foreclosure sale.

Accordingly, we discern no error in the trial court's finding that no merger occurred here.

2. PFG argues that the trial court erroneously relied upon the affidavits of Crews and Sinclair to hold that the Bank's deed to secure debt was outstanding. Pretermitting whether the trial court should have allowed Sinclair's affidavit, neither the affidavit of Crews or Sinclair provide a specific figure for the outstanding balance, but aver that "over $400,000" was outstanding on the security deed, and neither affidavit attaches business records to support the statements regarding remaining balances. Although there is little case law regarding the burden of proof related to remaining lien interests in interpleader actions, these bare affidavits would be an insufficient showing in order to collect on the security deed against a debtor.[15]

---

[14] See *DLT List II*, 301 Ga. at 134-136 (2).

[15] Cf. *Roberts*, 331 Ga. App. at 370-371 (2); *Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 327 Ga. App. 245, 249-251 (2) (758 SE2d 145) (2014).

The Bank was required to show that it had a valid priority interest in the excess funds, and because it failed to provide proof of an outstanding balance, we must reverse the grant of summary judgment.[16]

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[16] See OCGA § 48-4-5 (b) ("[E]xcess funds shall be distributed by the superior court to the intended parties, including the owner, as their interests appear and in the order of priority in which their interests *exist*.") (emphasis supplied). Cf. *Salas v. JP Morgan Chase Bank, N.A.*, 334 Ga. App. 274, 283 (4) (779 SE2d 48) (2015) ("a party seeking judgment on a suit on a note is not entitled to summary judgment as to the amount of the debt where it offers no testimony or any documentation explaining its method of calculating the specific amounts sought such that the trial court is unable to confirm the party's calculation of the purported damages") (punctuation omitted).