**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1474. TRICO ENVIRONMENTAL SERVICES, INC. v. KNIGHT PETROLEUM COMPANY et al.

MILLER, Presiding Judge.

In this dispute involving real property located in Meriwether County, Georgia, Trico Environmental Services, Inc. ("Trico Environmental") appeals from the trial court's grant of summary judgment in favor of Knight Petroleum Company and JP Capital and Insurance, Inc. ("the Defendants"). On appeal, Trico Environmental argues that the trial court erred in granting summary judgment because genuine issues of material fact remain on its breach of warranty, negligent misrepresentation, breach of contract, and tortious interference with business relations claims. For the reasons that follow, we reverse the trial court's order granting summary judgment on Trico Environmental's breach of warranty claim, but we affirm the trial court's order

granting summary judgment on Trico Environmental's breach of contract, negligent misrepresentation, and tortious interference with business relations claims.

> Summary judgment is proper if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from a trial court's grant of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

(Citation omitted.) *Performance Food Group, Inc. v. Davis*, 346 Ga. App. 487, 488 (816 SE2d 468) (2018).

So viewed, the record shows that during the 1970s, the City of Woodbury was constructing a sewer system along the boundaries of certain property located in Woodbury, Georgia, that was owned by Billy Knight. According to the City of Woodbury, Knight had requested that the city install the sewer line to prevent the construction of the sewer line from disturbing his gas station, which was located on the property. In 1992, Knight Petroleum acquired the property from Billy Knight via warranty deed.[1] Prior to closing on the property, Knight Petroleum obtained a plat survey of the property, and the survey did not show the existence of a sewer line, nor

---

[1] Billy Knight had also acquired the property via warranty deed in 1967.

did it make any reference to any utility easement. The warranty deed conveyed by Billy Knight also did not reference a sewer line or a utility easement.

On September 9, 2005, Trico Environmental purchased the property from Knight Petroleum via warranty deed. At the time of the purchase, Henry Anderson, Knight Petroleum's president, provided an affidavit to Trico Environmental averring that "said real estate, the improvements, equipment, appliances, or fixtures attached thereto are free and clear of all liens, encumbrances, restrictions, assessments, encroachments, leases, tenancies and occupancies. . . ." Trico Environmental obtained a loan from JP Capital to finance the purchase, granted JP Capital a security deed in the amount of $200,000, and used the property to operate a fruit stand.

Trico Environmental eventually fell behind in its payments on the loan, and, via a letter dated January 26, 2016, JP Capital notified Trico Environmental that it would initiate foreclosure proceedings unless Trico Environmental paid within 10 days a total debt of $122,511.55 plus attorney fees. On February 9, 2016, Trico Environmental paid JP Capital $4,125. Charles Hudson, Trico Environmental's owner, contacted William "Bill" Jones," JP Capital's president, and asked whether JP Capital would continue servicing the loan, and Jones told Hudson "no" and that he would prefer for Hudson to obtain financing elsewhere.

3

Hudson then contacted John Barker from First Bank of Pike ("Pike") to seek refinancing of the loan. In a letter dated February 24, 2016, Jones told Barker that JP Capital would not foreclose on the property if payment was tendered by February 29, 2016, in the amount of $119,092.05. Hudson subsequently provided a check to JP Capital in the amount of $119,092.05 on February 29, 2016. According to Christina Stephens, an accountant, the check was received but she informed Hudson that the check was insufficient because the attorney fees and costs associated with the foreclosure proceedings were still owed and were mistakenly left out of the payoff amount. JP Capital later stopped its foreclosure proceedings, but it notified Pike and Trico Environmental in separate letters that it would have to pay a balance of $820 for the attorney fees and foreclosure costs for it to release its lien.

In January 2017, Trico Environmental sought to redevelop the property to construct a restaurant and gift shop through an additional loan from Pike. Pike, however, declined to provide the financing unless JP Capital released its lien. Additionally, Trico Environmental also discovered the existence of a force main sewer line on the property belonging to the City of Woodbury. The City of Woodbury would not consent to Trico Environmental building on top of the sewer line, but it was willing to move the sewer to another location on the property if Trico

4

Environmental gave it an easement to access and maintain the sewer line. Construction for the new sewer was put on hold, however, due to JP Capital's unwillingness to release its lien. JP Capital later released its lien in May 2018.

Trico Environmental filed the instant suit against the City of Woodbury, Knight Petroleum, and JP Capital and asserted claims for trespass or inverse condemnation against the City of Woodbury, breach of warranty deed and failure to disclose against Knight Petroleum, and breach of contract against JP Capital.[2] In an amended complaint, Trico Environmental asserted additional claims for negligent misrepresentation against Knight Petroleum and interference with business relations against JP Capital.[3] Knight Petroleum and JP Capital answered the complaint, and JP Capital filed a counterclaim against Trico Environmental for breach of contract and attorney fees. Knight Petroleum and JP Capital later filed motions for summary judgment, which the trial court later granted. This appeal followed.[4]

---

[2] Trico Environmental later dismissed its claims against the City of Woodbury.

[3] Trico Environmental later filed a second amended complaint, pleading that the sewer line is an encumbrance that interferes with its use and enjoyment of the property.

[4] Trico Environmental conceded below that Knight Petroleum was entitled to summary judgment on its failure to disclose claim.

1. First, Trico Environmental argues that the trial court erred in granting summary judgment on its breach of warranty claim. Specifically, Trico Environmental argues that Knight Petroleum gave it a warranty that the property was free of encumbrances when, in fact, a force main sewer line belonging to the City of Woodbury traversed the property. We agree and conclude that the trial court erred in granting summary judgment on this claim.

Under OCGA § 44-5-62, "[a] general warranty of title against the claims of all persons includes covenants of a right to sell, of quiet enjoyment, and of freedom from encumbrances." Also, "a general warranty of title against the claims of all persons covers defects in the title even if they are known to the purchaser at the time he takes the deed." OCGA § 44-5-63. Thus,

> [i]n an action for the breach of a covenant of warranty of title, the burden is upon the plaintiff to show eviction under a paramount outstanding title. The rule seems to be everywhere recognized that to constitute a breach of the covenant of warranty, an eviction or equivalent disturbance by title paramount must occur, and that the mere existence of an outstanding paramount title will not constitute a breach.

(Citation and punctuation omitted.) *Lafontaine v. Alexander*, 343 Ga. App. 672, 678-679 (3) (808 SE2d 50) (2017). Additionally, as Trico Environmental correctly argues,

6

"a general warranty of title includes the warranty of freedom from encumbrances, and it is not necessary to show actual eviction." (Citation omitted.) *McMurray v. Housworth*, 282 Ga. App. 280, 286 (2) (638 SE2d 421) (2006); see also *Weiss v. Old Republic Nat. Title Ins. Co.*, 262 Ga. App. 120, 122 (1) (584 SE2d 710) (2003) ("In a suit for breach of warranty of title, the burden is on the plaintiff to show eviction or that which amounts to an eviction or an outstanding paramount title which he was obliged to yield to a third person.") (citations omitted).

In *McMurray*, supra, for instance, the plaintiffs purchased 12-acre parcels and also received general warranties of title in connection with their purchase. *McMurray*, supra, 282 Ga. App. at 281. In the chain of title to the property, however, was a "floodwater retarding structure" easement which had been granted to the district. Id. The easement was for the construction of a structure or dam, and it gave the grantor and the successors the right to use the easement. Id. In reversing the trial court's denial of the plaintiffs' breach of warranty claim, we first noted that the plaintiffs were complaining of a breach of the covenant of freedom from encumbrances, such as the claim in the instant case. Id. at 286 (2). We noted that "an easement is an assertion of a paramount qualified interest in the land, [and] its effect may cause an eviction of the owner of the property burdened by the easement insofar as [its]

7

exclusive use of the easement area was concerned." (Citation omitted.) Id. We therefore held that "[b]ecause the evidence show[ed] without dispute that the [defendants] breached their general warranties of title, the superior court erred in awarding summary judgment to the [defendants]. . . ." Id.

Here, the record shows that at the time of the purchase, Knight Petroleum provided an affidavit and averred that the property was "free and clear of all liens, encumbrances, restrictions, assessments, encroachments, leases, tenancies and occupancies. . . ." Knight Petroleum also provided a warranty deed in connection with the purchase that said that it would "warrant and forever defend the right and title to the . . . property, unto the said Grantee against the claims of all persons whomsoever." When Trico Environmental sought to develop the property, it discovered the presence of a sewer line, and the City of Woodbury would not consent to Trico Environmental building on top of the sewer line. The City did, however, consent to move the sewer line to another location on the property on the condition that Trico Environmental grant it an easement to access and maintain the sewer line. Thus, there appears to be evidence in the record that the City is asserting or attempting to assert its easement rights in the property against Trico Environmental. Therefore, we conclude that this

8

evidence shows that genuine issues of material fact remain on Trico Environmental's breach of warranty claim.

To support its argument that the trial court correctly granted summary judgment on the breach of warranty claim, Knight Petroleum relies on our decision in *Roberts v. Malu Constr., Inc.*, 217 Ga. App. 551 (458 SE2d 146) (1995). There, the plaintiff had entered into a contract with the defendant to purchase a certain lot of real property. Id. The defendant executed a warranty deed that provided that the lot "was suitable for the construction of a single family dwelling, and that the lots conveyed were lots upon which the authorities of [the county] would permit the construction of single family dwellings." Id. While developing the property, the plaintiff discovered wet soil had begun to accumulate on the land. Id. The county health department informed the plaintiff that the authority to install a septic tank on the lot had been revoked due to the discovery of a drainage easement that had directed water through the center of the lot. Id. In affirming the trial court's grant of a directed verdict on the plaintiff's breach of warranty claim, we held that, on a covenant for quiet possession, loss of possession had to be shown and there was no evidence of an actual or constructive eviction. Id. at 552 (2).

After a close analysis of *Roberts* and *McMurray*, we conclude that the facts of this case are more similar to those in *McMurray* than in *Roberts*, and therefore we apply the holding of *McMurray* to the facts of this case. Knight Petroleum's attempt to distinguish this case from our decision in *McMurray*, supra, also fails. Specifically, Knight Petroleum attempts to distinguish *McMurray* based on the nature of the encumbrance and its view that *McMurray* should not extend to cases where the seller had no knowledge of the easement at the time of the sale. Both arguments are unavailing. First, Knight fails to fully explain the difference between a floodwater retarding structure and a force main sewer line for purposes of the analysis for a breach of warranty claim. Second, Knight Petroleum fails to identify any case where a court has held that a seller must have prior knowledge of an encumbrance or easement at the time of the sale of property in order to be liable on a breach of warranty claim. Accordingly, we conclude that genuine issues of fact remain on Trico Environmental's breach of warranty claim and that the trial court therefore erred in granting summary judgment on this claim.

2. Second, Trico Environmental argues that the trial court erred in granting summary judgment on its claim that Knight Petroleum negligently misrepresented that there were no encumbrances on the property by construing the evidence in the

10

record against it and by presuming facts that were not in evidence. We conclude that the trial court properly granted summary judgment on this claim.

"The essential elements of a claim of negligent misrepresentation are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." (Citation and punctuation omitted.) *Home Depot U. S. A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (3) (724 SE2d 53) (2012). "The same principles apply to both fraud and negligent misrepresentation cases and the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." (Citation and punctuation omitted.) *Bowden v. Medical Center, Inc.*, ___ Ga. ___, (2) (b) n. 11 (845 SE2d 555) (2020). Under this construct, we have held that "the law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law to the effect that one cannot be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage." (Citation omitted.) *Hanlon v. Thornton*, 218 Ga. App. 500, 501-502 (1) (462 SE2d 154) (1995). Therefore, "a failure to obtain and supply information does not state a claim for

11

negligent misrepresentation." *Futch v. Lowndes County*, 297 Ga. App. 308, 312 (4) (676 SE2d 892) (2009).

Here, Knight Petroleum's president testified in his deposition that he first learned of the sewer line's presence on the property during the course of the instant action. Moreover, the record shows that Trico Environmental had equal opportunity to discover the sewer's presence. Trico Environmental leased the property from Knight Petroleum Company for approximately six months prior to purchasing it, and its owner testified in his deposition that, in preparation for the purchase, he inspected the property and that his attorney "checked the courthouse" records.

Thus, we conclude that the trial court did not err in granting summary judgment on this claim. Trico Environmental's negligent misrepresentation claim is based simply on Knight Petroleum's failure to obtain and supply information, which is insufficient to show an entitlement to relief on a negligent misrepresentation claim. *Futch*, supra, 297 Ga. App. at 312 (4). Consequently, Trico Environmental's negligent misrepresentation claim fails.

Furthermore, to the extent that Trico Environmental argues that the trial court presumed facts outside of the record in ruling on the motion, this claim also fails. To support this claim, Trico Environmental relies upon language in the trial court's order

that states, "[p]resumably a check of City Hall records would have indicated the presence of the sewer line." This statement does not support the contention that the trial court relied upon evidence outside of the record in ruling on the motion. The trial court's remarks were merely a part of its larger ruling that Trico Enviromental failed to exercise due diligence. Such a statement, however, does not entitle Trico Environmental to a reversal of the trial court's summary judgment order on this claim. Accordingly, the trial court did not err in granting summary judgment on this claim.

3. Next, Trico Environmental argues that the trial court erred in granting summary judgment on its breach of contract claim. Specifically, Trico Environmental argues that JP Capital breached the agreement that it made in its February 24, 2016 letter to Pike wherein JP Capital "guaranteed" that it would not foreclose on the property if payment was made within a certain time period. We disagree and conclude that the trial court properly granted summary judgment on this claim.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation omitted.) *Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502 (705 SE2d 305) (2010). Here, as it did below, Trico Environmental bases its breach of contract claim on the law of accord and

13

satisfaction. Assuming, without deciding, that Trico Environmental was a third-party beneficiary to the letter between JP Capital and Pike such that it could seek its enforcement, Trico Environmental would still not prevail on the theory of accord and satisfaction.

> An accord and satisfaction occurs when the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed. An accord and satisfaction is a contract, which requires a meeting of the minds to render it valid and binding. A definite offer and complete acceptance, for consideration, create a binding contract.

(Citations and punctuation omitted.) *USA Mfg. Corp., v. Perfection-Schwank, Inc.*, 271 Ga. App. 636, 638 (1) (610 SE2d 600) (2005). And, under OCGA § 13-3-1, an essential element to contract formation is "the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." "[A]s a general rule, whether there is an accord and satisfaction is a question for the jury. However, there are cases where the issue of accord and satisfaction has been properly decided on summary judgment." (Citations and punctuation omitted.) *USA Mfg. Corp.*, supra, 271 Ga. App. at 638 (1).

14

Here, in the letter from JP Capital to the president of First Bank of Pike, JP Capital "guarantee[d]" that it would not pursue foreclosure on the property provided that it received payment in the amount of $119,092.05. At no point in the letter, however, did JP Capital promise that it would also release its lien on the property if payment was received in the amount referenced above. Indeed, the letter makes no mention whatsoever as to the lien and what action would be taken with regard to the lien if payment in the above-stated amount was received. Furthermore, the record is clear that JP Capital informed Trico Environmental and First Bank of Pike that additional steps were required to release the lien, and Trico Environmental makes no argument that it satisfied the additional conditions for the lien to be released. Nor is there any evidence in the record that Trico Environmental conditioned the acceptance of the check on the release of the lien. Accordingly, the February 24, 2016 letter shows no meeting of the minds between the parties as to the release of the lien. Consequently, there was no accord and satisfaction in this case, and all of Trico Environmental's arguments in this respect necessarily fail. See *USA Mfg. Corp.*, supra, 271 Ga. App. at 638-639 (1) (holding that summary judgment was proper on breach of contract claim based upon accord and satisfaction, where, although creditor negotiated two check payments on the debt owed, there was no evidence

demonstrating that the debtor conditioned the acceptance of its payment on the satisfaction of the note and the creditor stated that the contract would not be considered executed unless additional terms were satisfied); see also *Isbell v. Credit Nation Lending Svc., LLC*, 319 Ga. App. 19, 25 (2) (b) (735 SE2d 46) (2012) (stating the general rule that on review of a trial court's grant of summary judgment, "we may still affirm the trial court's judgment if it is right for any reason").

4. Lastly, Trico Environmental argues that the trial court erred in granting summary judgment on its claim that JP Capital interfered with its business relations with Pike when it refused to release its lien on the property. We conclude that the trial court properly granted summary judgment on this claim.

> The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Dalton v. Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004). We have been clear that

16

[t]he exercise of an absolute legal right is not and cannot be considered an interference with a contractual or potential contractual relationship, because privilege means legitimate economic interests of the defendant or a legitimate relationship of the alleged interloper or meddler to the contract. Thus, if the defendant has a legitimate economic interest in either the contract or a party to the contract, then the defendant is not a stranger to the contract and acts with privilege. The actions by a secured creditor exercising its contractual rights does not constitute the wrongful improper conduct necessary for this tort action; for liability, the defendant must have acted improperly and without privilege. The defendant must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract for the conduct to be tortious interference. Where a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract.

(Citations and punctuation omitted.) Id. at 209 (4) (a).

Here, Trico Environmental argues that after the accord and satisfaction, JP Capital interfered in its business relationship with Pike by failing to release the lien so that Pike could finance the construction of the restaurant and gift shop. For the reasons stated in Division 3, however, there was no accord and satisfaction in this case. Hence, JP Capital "had the right to retain [its] security interest until all debts owed to it were paid or compromised[,]" and JP Capital's "actions or inactions

17

regarding its security interest did not as a matter of law, constitute a tortious interference." See *Dalton Diversified, Inc.*, supra, 270 Ga. App. at 209 (4) (a) (holding that the defendant was not entitled to a j. n. o. v. on its claim against secured creditor for tortious interference where the creditor had a security interest in the loan agreement to which the defendant had an outstanding debt).

Furthermore, contrary to its claim, Trico Environmental cannot prove malice. In the context of a tortious interference claim, "[m]alice, . . . is a term to be given a liberal meaning; malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse." (Citation omitted.) *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994). As stated above, JP Capital possessed a security interest in the property at issue, Trico Environmental owed it an outstanding debt for fees associated with the foreclosure process, and JP Capital refused to release its interest until the debt had been paid. This "evidence failed to create a triable issue as to the element of malice with intent to injure." Id. at 335 (2) (a) (holding that the trial court did not err in granting summary judgment on a tortious interference claim where the defendant landlord had a legal right to compete for the rental space at issue).

18

To the extent that Trico Environmental argues that Knight Petroleum was obligated to release its lien on the property because no balance was owed after the loan payoff, this claim fails. "When a creditor receives and retains a sum of money from his debtor less than the amount actually due him *with the understanding, either express or implied*, that it is received by him in satisfaction of his claim or demand, he cannot thereafter treat it as a nullity and recover the balance.") (Citation and punctuation omitted; Emphasis in the original). *McGlaun v. Southwest Ga. Production Credit Assn.*, 256 Ga. 648, 650 (2) (352 SE2d 558) (1987). Here, as stated above, JP Capital informed Hudson at the time that he tendered the check that the amount was insufficient to pay off the total debt owed, and thus there was no understanding, either express or implied, that the money tendered satisfied JP Capital's claim. Consequently, the trial court properly granted summary judgment on this claim.

Accordingly, for the aforementioned reasons, we reverse the trial court's order granting summary judgment on Trico Environmental's breach of warranty claim, but we affirm the trial court's order granting summary judgment on Trico Environmental's breach of contract, negligent misrepresentation, and tortious interference with business relations claims.

*Judgment affirmed in part and reversed in part. Mercier and Coomer, JJ.,*
*concur.*