**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11283

Non-Argument Calendar

_____

EDDIE DENHARDT,

*Plaintiff-Appellant,*

*versus*

WELLS FARGO BANK N.A.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:24-cv-00109-JRH-BKE

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Eddie Denhardt appeals the district court's order granting
Wells Fargo Bank, N.A.'s motion to dismiss his complaint for fail-
ure to state a claim.  After review, we affirm.

I

Mr. Denhardt filed a complaint in the Southern District of Georgia alleging state law claims for conversion and money had and received, in relation to the disbursement of excess funds from a tax sale of real property in Augusta, Georgia.

The property at issue was purchased by Jimmy and Ruthie Loftin in 1998. They later obtained a loan of $76,000 from Wachovia Bank, N.A. ("Wachovia"), secured by conveyance of a security deed to the property to Wachovia. Many years later, on November 3, 2020, the property was sold in a tax sale to the highest bidder for $60,000. After the payment of taxes, expenses, and fees, the excess funds from the sale were $56,639.33, which the county tax commissioner held in escrow. In September 2021, Wells Fargo Bank, N.A. ("Wells Fargo"), the successor in interest to Wachovia, claimed the excess funds. As a result, a check was made payable to Wells Fargo in the amount of the excess funds. About a month later, Wells Fargo redeemed the property from the tax sale purchaser, and, in April of 2022, foreclosed on the Loftins and sold the property.

In 2024, the Loftins assigned their interest in the excess funds to Republic Title Company LLC, which subsequently assigned those interests to Mr. Denhardt. As a result, Mr. Denhardt contends that he, and not Wells Fargo, was entitled to the excess funds as the assignee of the Loftins, the record owners of the property at the time of the tax sale on November 3, 2020.

Wells Fargo moved to dismiss the complaint, asserting that Mr. Denhardt's claims for conversion and money had and received failed because both claims depended on Mr. Denhardt's theory that Wells Fargo, holder of a security deed to the property, did not have any legal entitlement to the excess funds.  The district court agreed with Wells Fargo that it did have such an entitlement and granted the motion to dismiss.  The only issue Mr. Denhardt raises on appeal is whether Wells Fargo, as the security deed holder of the property, was entitled to the excess funds from the tax sale of the property before the property was redeemed.

## II

We review de novo the district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff.  *See Florida Comm'r of Agric. v. Att'y Gen.*, 148 F.4th 1307, 1314 (11th Cir. 2025).  As a federal court sitting in diversity, we follow the substantive state law as applied and interpreted by the highest court of the state.  *See Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1275 n.13 (11th Cir. 2024).  We "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940).

## III

Given that our task is to apply Georgia substantive law, some explanation of the relevant state proceedings and statutes is

required.  "Under Georgia law, if a property owner fails to pay county property taxes, the county may conduct a sale of the property to satisfy the unpaid taxes." *Bridges v. Collins-Hooten*, 792 S.E.2d 721, 724 (Ga. Ct. App. 2016) (citing O.C.G.A. § 48-4-1).  Following that sale, "the tax deed vests the purchaser with a defeasible fee interest in the property that continues for a one-year period during which time other interested parties retain a statutory right of redemption.  If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale." *Id.* (internal citations and quotations omitted).  Where a creditor (like Wells Fargo) "redeems the property, the amount paid by the redeeming creditor becomes a first lien on the property.  The redeeming creditor then has first priority to repayment—a super-lien for the redemption price—and may proceed to foreclose against the property based on that lien." *Id.* (quoting *Nat'l Tax Funding, L.P. v. Harpagon Co., LLC*, 586 S.E.2d 235, 238 (Ga. 2003)).  *See also* O.C.G.A. § 48-4-43 (prescribing the effect of redemption and the creditor's first priority lien).

Sometimes, the proceeds of the tax sale exceed the amount of unpaid taxes, together with any expenses and fees incurred in undertaking the sale, thereby generating excess funds.  The legislature has prescribed the procedures governing distribution of those excess funds.  *See* O.C.G.A. § 48-4-5.  The first provision mandates the following notice requirements:

> If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax

> commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale. . . . . The notice shall state the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.

§ 48-4-5(a). The second provision provides that the state officer may file an interpleader action for the payment of the excess funds when deemed necessary. *See* § 48-4-5(b).

Relevant too, for reasons explained below, is the statutory provision governing the treatment of conveyances of real property by deed to secure a debt, which provides, in relevant part:

> Whenever any person in this state conveys any real property by deed to secure any debt to any person loaning or advancing the grantor any money or to secure any other debt and takes a bond for title back to the grantor upon the payment of the debt or debts . . ., the conveyance of real or personal property shall pass the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid. Such conveyance shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have the property reconveyed to him upon the payment of the debt or

> debts intended to be secured agreeably to the terms
> of the contract, and shall not be held to be a mort-
> gage.

O.C.G.A. § 44-14-60.  With these provisions in mind, we turn to Mr. Denhardt's appeal.

### IV

Mr. Denhardt contends that, under Georgia law, the holder of a security deed in real property is not entitled to excess funds from a tax sale because the excess funds are personal property, not real property, and are not within the scope of a security deed holder's interest.  He asserts that we are bound to apply the Georgia Supreme Court's decision in *DLT List, LLC v. M7VEN Supportive Hous. & Dev. Grp.*, 800 S.E.2d 362, 365 (Ga. 2017), which supports his argument.  Wells Fargo contends that *DLT List* is distinguishable and that it is, under the plain language of the relevant state statute, entitled to the excess funds.

Because we are sitting in diversity, "we are required to apply the law as declared by [Georgia's] highest court."  *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 965 n.9 (11th Cir. 2001) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Thus, resolution of this appeal turns first on whether the Georgia Supreme Court's decision in *DLT List* controls.  The district court determined it did not, and we agree.

In *DLT List*, the Georgia Supreme Court evaluated whether, *following redemption*, a redeeming creditor's first-priority lien under O.C.G.A. § 48-4-43 extends to the excess funds arising from the tax

sale. Applying the rule of statutory construction requiring it to "afford the statutory text its 'plain and ordinary meaning,'" and "read [it] in its most natural and reasonable way," the Georgia Supreme Court reasoned that the statutory first priority lien of a redeeming creditor "awards a priority lien to a redeeming creditor that is specific to the *real property* at issue." *Id.* at 134–35. Because "excess funds from a tax sale are *personal* property that is separate and distinct from the real property itself," the Court held that the statute did not confer a priority lien against the excess funds on the redeeming creditor. *See id.* at 135.

Here, the property had not been redeemed when Wells Fargo claimed entitlement to the excess funds as the secured lender, creating an issue not presented in *DLT List*: whether, apart from any lien provided under O.C.G.A. § 48-4-3, a security deed holder's interest in real property extends to excess funds generated by the tax sale of that property. *DLT List* did not address this question, so we look to the decisions of intermediate Georgia courts to determine the application of state law and will follow those decisions "in the absence of convincing evidence" that the Georgia Supreme Court would hold otherwise. *See Stoner*, 311 U.S. at 465.

Mr. Denhardt contends that one Georgia appellate court has reasoned that, akin to the scope of a redeeming creditor's priority lien in *DLT List*, the instrument through which Mr. Denhardt has alleged Wells Fargo secured its interest in the property—a quitclaim deed—generally "conveys to the grantee only such interest as the grantor has in *real property*." *Georgia Lien Servs., Inc. v. Barrett*,

613 S.E.2d 180, 182 (Ga. Ct. App. 2005) (citing *Horn v. Gilley*, 428 S.E.2d 568 (Ga. 1993)). Combining this with the decision in *DLT List*, Mr. Denhardt claims that Wells Fargo has no interest in the excess funds because Wells Fargo's interest is limited to real property, and the excess funds are not real property. Wells Fargo contends, however, that the language of its agreement with the Loftins includes rights to personal property related to the real property conveyed. Because we conclude that Wells Fargo is entitled to the excess funds under the plain language of the statute as the record owner of a security deed affecting the property, we need not address this alternative argument.

As reasonable as Mr. Denhardt's argument may be, it conflicts with the decisions of two other intermediate Georgia courts that followed *DLT List*: *Performance Food Group, Inc. v. Davis*, 816 S.E.2d 468 (Ga. Ct. App. 2018), which reasoned that a security deed holder is entitled to such funds, and *Home Equity Credit Series 2021, LLC v. Labat*, 915 S.E.2d 82 (Ga. Ct. App. 2025), which relied on the plain language of § 48-4-5(a) to hold that a security deed holder may be entitled to those excess funds. Those two cases are contrary to Mr. Denhardt's assertion.

In *Labat*, the Georgia Court of Appeals, interpreting the plain language of § 48-4-5(a), expressly concluded that owners of security deeds on property subject to a tax sale "have entitlement to excess funds" from the sale. *See* 915 S.E.2d at 88. The *Labat* court began with the premise, as had the Georgia Supreme Court in *DLT List*, that it "must afford the statutory text its plain and ordinary

meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage" in order to assess the meaning and scope of § 48-4-5. *Id.* (citation omitted). Thus, *Labat* court looked first to the text of the statute "delineat[ing] the classes of parties to whom excess funds must be made available and paid." *Id.* The statute provides that the officer selling the property must give notice of the excess funds "to *the record owner of the property* . . . and *to the record owner of each security deed affecting the property* and to all other parties having any recorded equity interest or claim in such property" and required that such notice "*shall state the excess funds are available for distribution to the owner or owners* as their interests appear." *Id.* (quoting O.C.G.A. § 48-4-5). The *Labat* court concluded that "[t]his language evinces a recognition that such 'owners' have entitlement to excess funds." *Id.* Thus, under a plain reading of the statute, "'record owner[s] of each security deed,' ha[ve] some potential entitlement to excess funds." *Id.*

And the *Labat* court distinguished *DLT List*, which addressed the scope of a lienholder's interest. *See id.* at 86–87. For the same reason, *Labat* distinguished *Flat Creek Falls, LLC v. Labat*, 892 S.E.2d 188 (Ga. Ct. App. 2023), in which the Georgia Court of Appeals applied *DLT List*'s reasoning to conclude that the holder of a demolition lien—limited, like the priority lien under § 48-4-43, to a "lien against . . . real property," O.C.G.A. § 41-2-9(a)(7)—was not entitled to excess funds from a tax sale of real property. *See Flat Creek Falls*, 892 S.E.2d at 191 (emphasis omitted). After distinguishing

these cases, the *Labat* court reasoned that its conclusion "makes logical sense" given the nature of a security deed holder's interest: "[T]he owner of a deed to secure debt holds actual *title* to any underlying property" under O.C.G.A. § 44-14-60. *See Labat*, 915 S.E.2d at 88. The lienholders in *DLT List* and *Flat Creek Falls* have no such interest. *See id.* at 89. While a security deed holder may therefore be deemed an "owner" within the meaning of § 48-4-5, a lienholder may not. *See id.*

Performance Food Group* provides additional support for Wells Fargo's position and the district court's decision. In *Performance Food Group*, the Georgia Court of Appeals reversed summary judgment in favor of a bank holding a security deed for excess funds from a tax sale of real property, concluding that the bank's motion was not supported by competent evidence. *See* 816 S.E.2d at 471. But, it reasoned that, setting aside the evidentiary concern, the excess funds from the tax sale "should have been distributed first to the Bank," and "reject[ed] [the lienholder's] contention that the Bank's later security deed foreclosure on the property prohibited it from claiming the proceeds." *Id.* at 470. The *Performance Food Group* court reasoned that "[a]t the time of the tax sale, the Bank's security deed was in force and in first priority position. What may have occurred after that time does not affect the proper payment of excess funds." *Id.* at 471.

Both *Performance Food Group* and *Labat*, therefore, provide persuasive authority that, before the exercise of any redemption

25-11283                Opinion of the Court                11

rights, a security deed holder may be entitled to excess funds from a tax sale.[1]

Mr. Denhardt's reliance on the decision of the federal district court in *Jackson v. Wellington & Assocs. LLC*, 389 F. Supp. 3d 1199 (N.D. Ga. 2019), to resist this conclusion is unpersuasive. First, although "[t]he opinions of federal courts sitting in diversity are . . . persuasive," we will ultimately "follow relevant decisions of [Georgia]'s intermediate appellate courts" in the absence of convincing evidence that the Georgia Supreme Court would decide otherwise. *See State Farm Fire and Cas. Co v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). Second, *Wellington* is distinguishable under *Labat*'s reasoning given that it, like *DLT List*, addressed the scope of the lien created by § 48-4-43 *after redemption*, rather than the scope of a security deed holder's interest *pre*-redemption. *See id.* at 1210. Indeed, the district court in *Wellington* did not consider *DLT List* to be conclusive on the question whether, by virtue of its security deed, the security deed holder there, PHH Mortgage Company, had entitlement to excess funds—it applied *DLT List*'s conclusion that excess funds constitute personal property to the argument that PHH was entitled to the excess funds by virtue of its priority redemption lien, a contention clearly considered and rejected in *DLT List*. *See*

---

[1] We conclude only that security deed holders *may be* entitled to such funds because, as *Labat* notes, their entitlement in a particular case depends on "the order of priority in which their interests exist" relative to others who may be entitled to those funds. *See Labat*, 915 S.E.2d at 89 n.6. Mr. Denhardt has not asserted on appeal that he has an interest with priority over Wells Fargo's interest, arguing only that Wells Fargo has no interest whatsoever.

*id.* But, as to PHH's alternative argument—that it was entitled to the excess funds by virtue of its security deed to the property—the court rejected that argument based on the reasoning that *after redemption* PHH's security deed interest remained on the property, rather than the excess funds. *Id.* at 1211. But again, there has been no such redemption here. *Labat* answers the question of entitlement to excess funds in these circumstances. *Wellington* does not.

Finally, to the extent that *Wellington* can be read to conclude that a security deed holder *never* has entitlement to excess funds, *Labat* explicitly rejected that conclusion, which Mr. Denhardt concedes. *Labat* reasoned that it "would require [the court] to rewrite O.C.G.A. § 48-4-5 in a way that would both omit the classification of a holder of a deed to secure debt as an 'owner' and overlook the title held by such deed holders pursuant to O.C.G.A. § 44-14-60." *Labat*, 915 S.E.2d at 89.

The Georgia Court of Appeals' holding in *Labat*, predicated on the plain language of the statute prescribing the government's obligations with respect to excess funds from tax sales, is directly on point and persuasive. In the absence of "convincing evidence" that the Georgia Supreme Court would not adopt the reasoning in *Performance Food Group* and *Labat*, we will follow those cases' interpretation of Georgia substantive law, which demonstrates that

25-11283                Opinion of the Court                13

Wells Fargo was entitled to claim the excess funds as the record owner of a security deed affecting the property at issue.[2]

V

We affirm the district court's order dismissing Mr. Denhardt's complaint.

**AFFIRMED.**

---

[2] We decline Mr. Denhardt's request that we certify this question to the Georgia Supreme Court.